Morning. May it please the Court. My name is John Klein, and I represent the appellant Anthony Rutledge Sr. There are three issues that we've raised in this case, all going to a pre-conviction restraint of assets. But those issues have certain things in common. The first is that the district court here did not interpret these two forfeiture statutes at issue, 18 U.S.C. 981 and 28 U.S.C. 2461, strictly. The court did not construe the ambiguities in favor of the defense. In fact, the district court gave these statutes a reading that goes beyond their plain language and beyond any permissible reading of them. What the district court did through this interpretation is give the government a weapon, through the combination of 981 and 2461C, that effectively allows it to seize and forfeit the assets of an entire corporation if the government alleges that a single officer of the corporation schemed to defraud the corporation itself out of assets for the benefit of the officer, which is the allegation here. I want to ---- Well, I'll let your argument and then I'll raise the question I have. Go ahead. Thank you, Your Honor. Let me start with the first point, which is whether 2461C, which was enacted in 2000 as part of CAFRA, extends to mail fraud and wire fraud at all. The only two courts that have considered this issue, which are district courts in different districts in Pennsylvania, have held that the statute does not reach mail fraud and wire fraud in the absence of the factual predicates that are in 18 U.S.C. 982. In other words, there is no criminal forfeiture for mail fraud or wire fraud, and, yes, unless the factual predicates of 18 U.S.C. 982 are satisfied. The way the courts came to that conclusion was fairly simple. They looked at the plain language of 28 U.S.C. 2461C. And 2461C applies when there is no specific statutory provision for criminal forfeiture upon conviction. And the two courts, the Croce Court and the Grass Court in the Middle District and the Eastern District of Pennsylvania, found that there is, in fact, a provision for criminal forfeiture upon conviction for mail fraud or wire fraud. It's 18 U.S.C. 982. Congress has placed in 18 U.S.C. 982 certain factual predicates that the government has to establish to get criminal forfeiture. The offense has to affect the financial institution. It has to involve RTC or FDIC property, or it has to involve telemarketing. And if the government can't establish one of those factual predicates, as it couldn't in Croce, it couldn't in Grass, and it can't here, then it's not entitled to criminal forfeiture. But the bottom line is that because there is a specific statute that provides for criminal forfeiture upon conviction of mail fraud and wire fraud, 2461C simply doesn't apply. That's the ruling of those courts. I guess when I read 2461C, it strikes me as an almost perfectly ambiguous statute. I mean, I can read it the way you want me to read it, and I can read it the way the district court read it. Well, Your Honor, although I prefer you read it my way, I'm happy if you end up with ambiguity. Yeah, I understand. You know, when it says, but no specific statutory provision is made for criminal forfeiture upon conviction, and that means, you know, any person who's charged and on conviction, he won't be subject. That's the way the district court looked at it because it doesn't apply to him. Or you could do it the way you do and say, well, if he's convicted of mail fraud, there is a provision, and the provision just doesn't cover everything, and it doesn't cover him. Well, Your Honor, let's assume for a moment that it's ambiguous. There are a couple of ways to, a couple of places to look that I think push the argument in my direction. One is the legislative history of CAFRA, which we talk about at some length in our brief. There was an early version, two early versions, in fact, of the bill that became CAFRA, which had provisions that would expand 18 U.S.C. 981, which is the civil forfeiture provision, to include essentially all Title 18 offenses or all specified unlawful activities under the mail fraud, the money laundering statute. Those early versions of the statute also expanded 18 U.S.C. 982, which is the criminal forfeiture provision, to include all of those underlying offenses. So, effectively, those early versions of CAFRA would have done what the government says happened sort of through the back door under 2461C. The provision that expanded 18 U.S.C. 981, the civil provision to cover all the specified unlawful activities in 1956, made it into CAFRA. The provision that would have expanded 982, the criminal provision, to include all of those statutes did not. Congress elected not to include that in the statute and instead left in place the factual predicates that are required now for criminal forfeiture for mail or wire fraud affecting a financial institution. Kennedy. First, they might have figured that they no longer needed to expand 2461 because they've got this other route now. Well, that's the government's position here, and I think there are a couple of problems with it. One is it's an odd way for Congress to accomplish the result it wanted. If it meant through 2461C to wipe out the factual predicates that it put in 982, you would think it would say so in some fashion, and you'd think it would amend 982 to remove those factual predicates rather than leaving those in place. Yeah. I suppose you could repeal the whole thing if you're going to. You'd think so, yes. There'd be no need for it. The other bit of legislative history that sort of counters or cuts against the government's predecessor to CAFRA. H.R. 1745, which we talk about in our brief, was drafted by the DOJ and introduced into the House of Representatives basically on the DOJ's behalf. And it has provisions that are somewhat analogous to the provisions ultimately enacted in CAFRA. That statute had in it a provision that expanded 981 to include all Title 18 offenses. It expanded 982 to include all Title 18 offenses. And it had a provision that's analogous to 2461C. Now, if you buy the government's argument that the reason the expansion of the criminal forfeiture statute didn't make it into the final bill because Congress already did that through 2461 and it wasn't necessary, then why did the DOJ have it in there in their version of this statute? They had it in there because that was not the purpose of 2461C at all. What 2461C accomplishes is two things. And you can glean this to some extent from the House report on which the district court relied. 2461C solves the problem when you have a criminal statute that has a forfeiture provision in it but doesn't specify whether the forfeiture is criminal or civil. And the House report itself cites two examples. There's 18 U.S.C. 545, which is a smuggling statute. And there's 18 U.S.C. 1955, which is a gambling statute. 2461C allows the use of criminal forfeiture in that circumstance, where you have a criminal statute, it has a forfeiture provision in it, but it doesn't specify whether it's civil or criminal. The other thing that 2461C does, it takes care of the situation where you have a criminal statute, you have a civil forfeiture provision for that type of criminal conduct, and you don't have any criminal forfeiture statute at all. An example of that is securities fraud. And this is the Causey case that the government relies on, the Enron-related case from the Southern District of Texas. There you have securities fraud, which is a criminal offense. There's a civil forfeiture provision for it in 981, but there's no criminal forfeiture provision at all. And in that situation, 2461C applies. That's what the statute accomplished. It did not set about to wipe out, without telling us, without amending 982, the factual predicates that 982 requires the government to prove before it can get forfeiture for mail fraud or wire fraud. What the government's reading effectively does is give it two bites at the forfeiture apple in a mail fraud or wire fraud case. If it's able to prove the factual predicates for 982, affecting a financial institution, telemarketing, or FDIC, RTC property, then it can go under 982. If it can't meet its proof under 982, then, according to the government, it goes through the back door under 2461C. That can't be what Congress had in mind. And to the extent there is doubt about it and ambiguity under the principles and interpretation that we talk about in our brief, those have to be, in our view, resolved in favor of the defendant, in favor of lenity. I'd like to reserve a few minutes. I'm going to turn to the third. I'm sorry, Your Honor. I guess I don't understand this. Did the indictment allege that there could be asked for a forfeiture? Yes. Count 13 of the indictment, which is in the record excerpts, has a forfeiture allegation. It cites 982, by the way. For me, reading this statute, maybe I'm just not getting the argument. It appeared that this is an appeal from a preliminary order that kind of sets the  Is that essential? Yes. So that on conviction, they can be forfeited and they won't be dissipated. Is that what we're doing here? It is a, yes. It is a pre-conviction restraint in anticipation of a potential forfeiture. And so it seemed to me that the statute said that if the, if the, if this, this provision means that if the statute itself doesn't call for it, you can, you can ask for it in the, in the indictment so that he'll be on notice that this is what he's, might happen to him. And he was indicted. Well, he was indicted, and we So why hasn't everything been fulfilled, and why doesn't this make perfect sense, that having charged it in the indictment, that they can go for it? Because charging it in the indictment doesn't mean that the statute covers the, the forfeiture that they're seeking. In other words, they can charge whatever they want in the indictment, just as they can charge an offense in the indictment, and this Court may well conclude that the statute doesn't cover the charged conduct. This is that kind of situation. They have alleged forfeiture in the indictment, and we're not contesting the, you know, the sufficiency of the indictment or anything like that. What we are saying, though, is that the statute that they rely on, in this case 981 in conjunction with 2461C, does not permit forfeiture for the offenses of mail fraud or wire fraud, which are the offenses charged in the indictment. And to go one further step, Your Honor, to cover your initial point, if it doesn't permit forfeiture, it certainly doesn't permit pre-conviction restraint. I'm going to, in the interest of time, I'm going to bypass our second point, which I'm happy to answer them. I want to turn to the third point, which is the proceeds issue. Under 981, now, we're assuming for a moment that 981 applies in conjunction with 2461C. Under 981, in order to have forfeiture and, of course, in order to have pre-conviction restraint, if it's available, there have to be proceeds. Now, the forfeitable assets can be traceable to proceeds, but they have to tie back eventually to proceeds. And the term proceeds is defined in 981, and I'm paraphrasing here, but essentially as property that is obtained as a result of the commission of the offense. So to have proceeds, to have something that is forfeitable, you have to have something that the defendant obtains. Now, the word obtains isn't defined in the statute, but it is defined recently by the Supreme Court in the context of the Hobbs Act. And the court defined obtains to mean gain possession of. And it rejected, in a footnote that we cited in our brief, in applying the rule of lenity to do this, it rejects an interpretation of obtains that would essentially mean to control. And that is the construction that ought to be given the statute here. Obtains means to gain possession of. And the evidence in the district court, we had a brief hearing in the district court, and the evidence was undisputed that these assets that we're talking about here are titled in the name of Unity House, which is the nonprofit corporation we're talking about here. The money is in the Unity House bank accounts. The property, the real property, is titled in the name of Unity House. The notes receivable are due and owing to Unity House and haven't been assigned to anyone. All of this property is in the possession and titled to Unity House. None of it is in the possession of Mr. Rutledge. He never obtained it. And this, Your Honor, gets to the point about what the effect will be if the word obtained in 981 is read as broadly as the government would like to. We give the example in our brief of the Kozlowski case, the Tyco case. And I'm assuming facts here. I'm not a party to that case. But you have there a situation where a corporate executive is charged with using his power over the corporation and his domination of the board of directors to loot the corporation, to line his pockets. And allegedly Mr. Kozlowski took millions of dollars out of Tyco by his dominance of the board to get them to issue him bonuses, basically do whatever he wants with the corporate assets. Under the government's theory here, because his scheme, allegedly Mr. Kozlowski's scheme, was to gain control of Tyco and its assets through fraudulent representations to the board about what he was doing and taking and so on, that could be charged just the way the government charged this case, essentially as a mail-or-wire fraud scheme to obtain control of the corporation through deceptive means. Under the government's theory, it would be able to forfeit, seize, pretrial, and then forfeit, not just the money that Mr. Kozlowski actually took out of Tyco, those millions of dollars that found their way into his possession. The government would be able to seize and forfeit all of Tyco's assets because they were the object of Mr. Kozlowski's alleged offense. To use another example, a much simpler example, but one that I think is equally troubling, if you have a con man who preys on a widow, an elderly widow, and takes her into his confidence and convinces her to do whatever he wants with his money, and let's say she has a million dollars, and he gets her to send $500,000 of that million dollars to his bank account. The other $500,000 is still sitting in her bank account, and he gets picked up, arrested for his offense, and charged. Under the government's theory, not only could it forfeit the $500,000 that he diverted into his bank account, which makes sense, it can forfeit the $500,000 still in her bank account because he controlled it. He had, through his influence over her, through his deceptive conduct toward her, he had convinced her to do with that money whatever he wanted. Now, that's just wrong. That can't possibly be what this statute means, and, of course, it is wrong, because if you look at the plain language of the statute, there have to be proceeds, and there aren't proceeds until the property is obtained. In the property, he never obtained the widow's property. Dennis? Kennedy. At one point, the trial court mentioned Alter Ego. In other words, you can imagine situations where a wholly owned corporation is simply an Alter Ego of somebody, and he has obtained it. What's your answer to that reference by the district court? There might be a circumstance like that, although the cases at the government sites involve people who have taken things that are already proceeds and put them into an Alter Ego corporation and then tried to say you can't forfeit it because it's not mine, and that doesn't work. But still, you can imagine a situation, but not on these facts. I mean, again, the evidence was undisputed in the district court that this entity has an entity in good standing. It has a board of directors. It has officers. It has bylaws. It has articles of incorporation. The board meets. It has a general counsel. It has accountants, inside accountants, outside accountants. I mean, there is no evidence of the sort of commingling that you saw in the Perron Industries case at the government sites where, you know, if Mr. Rutledge were taking his own assets and mixing them up in the corporate bank accounts and that kind of thing. I mean, what you have here, boiled down, is basically a garden variety case of an allegedly, this is the government's theory, where an executive through, for whatever reason, through force of personality or more time on his hands than the other board members or whatever, dominates a corporation and can bend it to his will. That's not an Alter Ego situation. It's not. Kagan. Okay. I'm going to save the rest of my time. I think we understand your position. We'll give you about two minutes on rebuttal. Thank you. Good morning. May it please the Court. Patrick Murphy on behalf of the United States. We agree with the defense that the three issues in this case are all somewhat related, but that is essentially where we diverge paths. With respect to the first issue raised by the defense on whether or not forfeiture itself is available, the way the statute is written makes clear that it is available in both situations, one where there is no mechanism for forfeiture, but forfeiture is provided for, such as the statutes Mr. Klein referenced, or Firearms Forfeiture 18 U.S.C. 3665. In those instances, reading the language of the statute, you say, yes, there is no statutory provision. It applies here. So you don't – there would be no need to plead it in the indictment. No. It has to be pled in the indictment. Notice has to be given to the defense for there to be forfeiture. Yes. Any forfeiture? Yes. Okay. I'm just talking about the application of the forfeiture statutes to this particular case. Okay. The language of the statute that if a forfeiture of property is authorized in connection with a violation of an act of Congress and any person is charged in an indictment or information with such violation, but no specific statutory provision is made for criminal forfeiture upon conviction, then the statute will apply and we can go ahead and have forfeiture. That, if you just look at the – if there are no civil forfeiture statutes and there's just statutes such as the firearms forfeiture without a triggering mechanism or procedures, you can look at this and say, yes, that clearly applies. Now, if there were no statutes such as those criminal ones with no procedures, the firearm forfeiture or false labelings, all those statutes, if those statutes didn't exist and there was civil forfeiture and criminal forfeiture and you read this statute, if a forfeiture of property, that's not limiting civil or criminal, a forfeiture of property is authorized in connection with a violation of act of Congress and a person is charged as he was here, this language clearly covers both situations. The defense refers to the Croci case out of the Eastern District of Pennsylvania. That case decided by Judge Dalzell is just, A, he didn't have the benefit of any of this argument before he made that decision, B, there are a number of decisions in that case amending, altering, retracting portions of his orders of forfeiture. And C, to the extent it does apply here or the rationale applies, it's just clearly wrong because it does not track this language. And it also ignores the legislative history here. The defense has invoked the legislative history. I'm willing to talk about the legislative history on a macro level or on a micro level. Everything discussed in the record with respect to the development of this law says, let's expand the forfeiture to the criminal realm. The defense can point to nothing saying let's hold off. All they can say is, oh, there was an earlier version of 982 which wasn't enacted. But 2461C was in fact enacted, and that language covers this. Also, just looking at the development of criminal forfeiture law over time, there was no such thing 50 years ago. It only started with RICO. And then we had the advent of 853, and it has been then Congress added particular statutory forfeiture provisions, criminal forfeiture provisions over time. What CAFRA, the Civil Asset Forfeiture Reform Act, did was say, okay, enough of this. Let's just fill the gaps with one broad sweep. There's no need now to have particular amendments to 982 or 981. What we have is we've broadened 981 to cover. All you have to do is to ask for it in the indictment. You ask for it in the indictment and plead it properly and demonstrate probable cause if you want to restrain something, all of which was done here, and then prove it at trial, which is yet to come. So the development of the law over time certainly indicates Congress's preference to move towards criminal forfeiture because of its enhanced due process protections. Ginsburg. In other words, if there's some provision for civil forfeiture and someone is charged with the crime criminally, you can do a criminal forfeiture? Exactly. If you allege it. Forfeiture provision. Now, if there is now – if this were a case involving forfeiture where there already was a specific statutory provision for criminal forfeiture, then we would use that. We would not be here under the civil. Well, it sort of depends on what level of abstraction or generality you look at it. If there is no specific statutory provision for criminal forfeiture upon conviction of mail fraud that doesn't involve telemarketing and that doesn't and so on, so on. But you can also say there is a statutory provision for criminal forfeiture upon conviction of mail fraud. It doesn't cover every case. There are requirements for it. Yes. You have to – if you're going to make that statement, you have to cut off a portion of what the statute actually is, because it's not just mail fraud or just wire fraud. It's mail or wire fraud affecting a financial institution. But when was this act enacted? 2000. If – Which is way post-RICO. Way post-RICO. And the 982 statute was initially enacted as part of FIRETA in 1989. That was when we had the SNL mess going on. And Congress came in and said, you know what, when people are defrauding financial institutions, here's an instance where we are going to put in specific forfeiture. When people are defrauding the RTC or conservators or FDIC, here's a specific instance where we are going to put in criminal forfeiture. And that's 89. We're talking a long time ago, relative to the development of criminal forfeiture law in particular. And now later, Congress says, let's fill the gaps. The title of Section 2461 in the bill was encouraging the use of criminal forfeiture as an alternative to civil forfeiture. The title tells us what they wanted to do here. And it tells us that this does, in fact, apply. So the defense's arguments on that completely disregard the development  And they also don't agree with it. If the history were – if it weren't for the history, this would – might be quite different. Well, I think – I think the legislative history with respect to this particular bill also indicates any time anybody spoke about it, they said, hey, we need to expand criminal forfeiture. And also, pretrial restraints, which is the second issue in this case, are necessary. The defense's interpretation of 2461c would have it be that Congress enacted a law that says it's designed to encourage the use of criminal forfeiture, but in fact only expanded civil forfeiture and didn't provide any mechanism to provide – to preserve the assets pretrial. Every single instance in the criminal forfeiture world where there is a statute that says this can be forfeited criminally and here's how you're going to go about doing it, allows for pretrial restraint of assets. And every court that has looked at any criminal forfeiture statute has said pretrial restraint of assets is imperative. This – this Court in Rapinski, which the defense cites in relation to substitute assets which aren't relevant here, says directly forfeitable assets are – are available under the statute that was relevant there, and the government can seek to preserve those assets for trial, and cites 853e, which is the statute we're talking about here. Now, the defense's argument in this is, well, there's this upon conviction language. In the statute it says, upon conviction, the court shall order the forfeiture of the property. That is what happens. Upon conviction, the court orders the forfeiture of the property. There's – there's nothing really remarkable about that. What Congress did in this section, however, was exclude one particular subsection. Normally in a conviction, you have to sentence somebody, right? Forfeiture is part of that. That's – yeah. But there's also another part which you seem to be skipping totally, and that is the part which says you pay back the people who were the victims of the crime. There are 12,000 people here whose money this is, right? They're getting nothing out of it. It's all going into the Treasury. That – I disagree with that proposition, Your Honor. This forfeitable property is – I mean, there's restitution and there's forfeiture. Forfeitable property is subject to valid claims by third parties. And the Supreme Court in Kaplan and Drysdale says specifically the purpose of forfeiture is to pay back victims, and that is exactly what is intended here. And the court made very clear in its rulings that it wasn't, you know, going to let third-party rights be trampled on. By the way, does your indictment name Arlene Illay as a co-conspirator? I don't believe it does, Your Honor. Then how do you make her into a nominee for purposes of the – either you didn't name her or you did name her, and you didn't, you say. I don't believe we did. I may be misspeaking on that, but let's assume she wasn't. The facts still demonstrate, we would assert if this were backed down to actually be addressed by the district court, that she was in fact a nominee. And actually, in the initial restraining order, the court found – Well, you want us to ignore her brief and her petition to intervene. And you say she's a nominee, and yet you don't name her as a co-conspirator. And there's nothing to tell us that except you say so. Well, I don't believe her brief actually adds anything, but the agent's affidavit, which the court relied on, actually, at 152 of the excerpts of record, makes a reference to one incident that Ms. Illay is involved in. Also, the court's initial order found the – Is it criminal involvement that he's suggesting? And if so, why didn't you name her as a co-conspirator? Well, I don't think there was any reason to at the time, and I don't know if there is now. But now that she – now that she asserts that she's an officer of the corporation and that she has certain rights to run what was going on in the corporation, now you do claim it is? Pardon me? The articles of incorporation which the defense put in the record during one of multiple hearings they had, and those are at 275 of the excerpts of record, say that to be a member of the board or to be an officer or director, you have to be a friend of labor. Mr. Rutledge was barred by the Hotel Employees Union for life. And the board still held him a friend of labor. I am not suggesting that, you know, he's a crook. If that's what you want, so what? I'll accept that. But so what? But the board found probable cause that this was an officer of labor. And so the presence of these other board members and whatnot, the defense hasn't challenged that probable cause finding. That's all we're talking about here for purposes of this pretrial hearing. And the facts adduced and the totality of the record. Do the statutes say that it's probable – that you need to show that it's an alter ego? Well, for purposes of criminal forfeiture, you have to show that they – that the person obtained – is that correct? Well – Not obtained control and not made into an alter ego. It generally is concerned obtained. Now – and but for the crime alleged in the indictment, the defendant would not have had complete dominion and control over this property. It doesn't say that. Because in the statute, does the statute say that? Which statute, Your Honor? The forfeiture statute. Well, the forfeiture – criminal forfeiture is in personam. So we can't go out and criminally forfeit – I'm aware of that. A third-party property. So – Yeah, but you can forfeit a share of stock. You can forfeit, you know, a bank account, which is something which is – the bank has the money, right? But you can't afford – you can forfeit the bank account. Depending on the nature of the crime alleged, absolutely, Your Honor. I really am confused. The district court didn't let the people from the corporate – the nonprofit intervene. They never sought to. They never raised a peep until this appeal. There was not a word of complaint from Ms. Elay or any other officers or directors. That is a fundamental problem with their complaints now. They never said, oh, what about us? And also, not a single member of Unity House or either union has complained at the time, nor has anyone voiced any complaints about the operation of the receivership since. Why did it call an intervener? I don't – Well, she's just seeking to intervene on appeal. And she filed a motion for leave to intervene on appeal. Only a motion on appeal to intervene? Exactly. Exactly, Your Honor. Well, isn't it relevant as to whether or not – I mean, if the whole question of – I think what – if in order to get these funds, forfeit the funds that belong – that are in the name of, at least – what's the name of it? Amity House? Unity House. Unity House. Okay. We've got an Amity House someplace in Phoenix. No. That's another one. Unity House. In order to get those funds, do you have to show that there's an alter ego relationship? In order for there to be criminal forfeiture of this property, there has to be a demonstration that it is effectively controlled or obtained by – Does it mean it has to be an alter ego? I mean, you can have a big guy there who's controlling it, but does it have to be the alter ego? Because it just seems to me that these people have a legitimate gripe that here is an order that affects the funds of the nonprofit, and they're not being heard as to whether or not it's an independent entity. And you didn't bring them into the courtroom, did you, in any way, shape, matter, or form? We had no need to, but – Well, of course not. If I don't have anyone opposing what I want to have happen, I'll get my way. That's wonderful, but that's not quite the way it's done. Well, but Ms. Elay is now saying she does, in fact, oppose what we're doing, but she never said a word to the district court over the course of several months. Did you do anything to bring her or any other member into the courtroom, yes or no? Not other than they were well aware that the – How were they well aware? They were served with the – You served 1,200 copies of the pleadings? Oh, no, Your Honor, no. We did not serve each member of Unity House. What did you do then? We served Mr. Rutledge. I believe other members of the board were served. They were certainly on actual notice because the IRS went in and took over the institution. Well, of course they were. All right. When you – you're saying that the real estate of that corporation was obtained by Rutledge, correct? All control over every aspect of that corporation was obtained by Mr. Rutledge through the mail-and-wire fraud that's alleged in Counts 2 and 3 of the indictment. When you get a judgment of forfeiture, of criminal forfeiture, you forfeit what? His interest in that? The corporate entity and its assets would be forfeited subject to the third-party claims. The intent here is to then give back the entity to its membership or whatever after you take everything. I mean, that is the point of forfeiture law under Kaplan and Drysdale. And just generally, we are supposed to try to give it back to those who were victimized. And what do they do? They file a claim? They file an ancillary claim after the conviction, absolutely. They have a burden of showing then that they have an interest, I suppose. Okay. In other words, the government is trying to protect them? Absolutely. And the Court is also – the Court has said the Court's monitoring the receiver. No acts are being done that aren't being approved by Judge Ezra. And there has not been a single complaint by the membership. This is – it's business as usual, only without the crime. The charity's actually operating in such a way that everybody's getting the benefits and there's, you know, putting apart internal financial improprieties. It's actually being done exactly as it should be done and exactly as the forfeiture laws would contemplate. And the defense's reliance on this Scheidler case for a definition of proceeds, A, that's a RICO case. It has – or a Hobbs Act. It has nothing to do with mail and wire fraud. And, B, what that case relates to was barring people from access to abortion clinics. And the Supreme Court basically said that's coercion. What we're not talking about here is anything like that. What we are talking about is dominion and control over the assets that we are seeking to forfeit. And they say there's going to be nothing left? They – nothing left of? Of Unity House. Of Unity House by the time you get through with it. That's what the defense is saying, but that is certainly not our position and I seriously doubt Judge Ezra would allow it. Don't you think that the folks at Unity House ought to have a right to be heard on that? And they will be, assuming that there is a conviction. If there's not a conviction, then they obviously go back in. Meantime? In the meantime, we are simply preserving forfeitable assets for trial. And that is all the government is seeking to do here, and the district court found probable cause. And can Unity House go on with its business? Absolutely, and it has been. It has been since the 14th. By whom? Who's doing it? Who's doing the business? The court-appointed receiver is EG&G Financial, which is overseen by Treasury. And any time any major, you know, non-ordinary course of business acts happen, like sale of a property or something like that, then that is all done by motion to the district court. And Judge Ezra is monitoring all of this, and there has not been a single complaint about how it's being operated. If there are no further questions, I will. Thank you. Thank the Court's consideration. Just a few quick questions. Why does your client care whether this is? I beg your pardon? Why does your client care whether these assets are tied up? Yeah. Well, because he has two, I mean, apart from just his being upset that this institution he's been part of for many years has been taken over by the IRS, he has a right to indemnification, which was approved by the Board of Directors in accordance with Hawaii law on the advice of counsel. That has been, that was terminated the day the IRS took the institution over. They terminated that, which means he's not able to pay for his defense in this case. That's part of it. And his salary was cut off. So, and he was, of course, fired from his job, as was, by the way, Ms. Ely. If you want to know why Ms. Ely hasn't been in court, she and the rest of the Board of Directors of this institution, who are not accused of any crime, who are not co-conspirators, were summarily removed by the IRS when it took over the institution in December of 2004. Mr. Murphy cited to page 152 of the excerpts of record as something Ms. Ely was involved in. Well, what she was involved in, according to this affidavit, was as part of the Executive Committee of Unity House, which is one of the duly formed subcommittees of the Board, she approved with other members, including the General Counsel, a consulting contract. That's the extent of her wrongdoing here, and yet she's been taken out of her job by the IRS and put out on the street. The other thing I wanted to say, and this is in response to Judge Duffy's point, the third parties in this case, the beneficiaries of Unity House, this property becomes the government's property if it gets forfeited. They can file, if they have the wherewithal to hire lawyers, to make claims, to meet their burden of proof, they might be able to get something out of it. But it's going to be their burden. They're going to have to file lawyers. And these are not wealthy people. These are working people who are going to have to try to do this. The bottom line is, as the prosecutor said in a newspaper article that Ms. Ely attached to her affidavit, when the IRS is done, there won't be a Unity House. That's what's happening. Were you representing, was your firm representing the defendant in the trial court? We represent Mr. Anthony Rutledge, the same person we represent here, we represent in the trial court. Thank you. The case just argued is submitted for decision. The Court will take a 10-minute recess.
judges: Schroeder, Canby, Duffy